Good morning. Good morning. I'd like to reserve two minutes for rebuttal if I may. May it please the court, my name is Lars Isaacson and I will present Ms. Ventura-Oliver and her appeal today. The first, we have two issues before the court. The first issue is whether or not the court committed plain error by not giving a model instruction 4.41A, a dual role testimony instruction we believe should have been given in this case. Can I ask you to maybe flip the order of your issues in case you run out of time? Okay. Why don't you start with the other issue? Other issue, okay. That one seems like a real stretch under plain error. Oh. Oh. But I will, of course, will concur with the court. Okay. Well, the second issue that we have is, there's really two parts to the second issue. The first part, I believe, Judge, and I think the law is plain, that the trial court used the wrong standard regarding whether or not the trial notebook that was discovered to have the word guilty on it. No, it didn't have the word guilty on it. It had the impression that somebody had written guilty. Isn't that the fact? An indentation. When you said it had the word guilty written on it, it seemed to me a little stretch. It had the impression of a piece of paper or something having guilty written on it, and the impression was there. Isn't that pretty much what this record shows? There was no ink. It was an impression on the notebook, but still the word guilty appeared visible to the juror at the time. And not only that, he shared it with one other jury and the alternate. Can you help just with a factual point? So are we talking about, it's like a cardboard cover, and somebody had a piece of paper, and they wrote guilty on the paper, and it kind of went through to the, is that what we're talking about? I understand, Judge. There's indentation on the cover of the notebook. And was the, when did the juror first notice that? It came to the attention of the court on the fourth day, so the fourth day of testimony. I know that, but so your answer is that we don't know when the juror, him or herself, first became aware? Correct. Okay. Because the judge assumed that it had been left in a prior case. That's correct. And I couldn't quite reconcile that with the juror's statement. I think the reason the juror first raised it is that the juror said, I think somebody is trying to set me up, or something like that? Well, this was in the context of another issue that had come before the court. This was one, there had been people in the audience, my client is Hawaiian nationality, and she's a sovereign type person who cares very deeply about the Hawaiian people. Part of her trial had been observed by people of, excuse me, her supporters who care very deeply. There were some outbursts in the courtroom, and then there were some yelling across the street. And so motions, or this issue was brought before the court. And I believe this was part of that, a tail end of this, dealing with this issue of the outbursts in court and on the street. And then this was said by the juror. Okay, but so the juror's statement, though, that I think somebody might be trying to set me up, suggests that that, that he, is it he or she, I'm sorry, I can't remember. I believe it's a he. He. That he first noticed it during the trial, not on, because the judge's assumption was that somebody left that from a prior case, which would suggest that the juror would have noticed it on the, you know, as soon as they handed him the notebook, right? But this was, you said, four days into the trial? There was no, my read of the transcripts from the record that I reviewed is there was no indication that it appeared on a prior day. That, I mean, he didn't say it did. It may have, but we don't know. There was no. He talked to a couple of the jurors about it. He did. So it was during the process. Yes. Well, I guess that's, that would be a good point. I don't know. I'm trying to think exactly when. I don't recall there was any testimony as to when it was shown specifically that day or a previous day. Okay. One of our issues in this case is that with criticisms that we have of the judge, Judge Seabright didn't do an evidentiary hearing of any kind. Excuse me, I keep doing that. What he did was he talked to the juror and said, hey, this must be from a previous case. I tore off the notebook cover. It's not part of this case anymore. But he never, there's no determination, no, any kind of hearing as to what actually happened. No witnesses were called. No bailiffs were summoned. Who would be called? Why would he have to do that? He was, he, he gave instructions to the jurors. He asked them whether or not it would make any difference. He gave them instructions. They're not to consider it. We'd assume they're going to follow those. Why would he have to have an evidentiary hearing? Why didn't he have, know enough then to solve the problem for the case itself? Because he assumed it came from a prior case. If it had come from an outside influence, if it had been, let's say, somebody in the courtroom had slipped up and done it. You have any evidence at all? Of course not, because there is no hearing done. Well, you've got investigators. They're no longer under oath. If it's a big deal, you've got investigators. You can go talk to jurors afterwards. There's no law against that. I used to do it when I was a trial lawyer. So there's been plenty of an opportunity, but if nothing has shown up thus far, why is there any prejudice to your client based upon the instructions given by the jury that they're to disregard anything they know about that, and all of them said they could? Because this is an extrinsic evidence case, not an ex parte contact case. This is an extrinsic evidence case, and that, this, this ex parte context has to do with There's no evidence of ex parte contact. Well, that's what the judge said in this case. This is ex parte. In the Tevez case, which I'm sure we've talked about, they said this is ex parte contact. We say, no, this is an extrinsic evidence case. Okay, but you've never gone out and gotten any evidence. I mean, the judge doesn't have to. The judge says, for purposes I see, this takes care of it. You say he's made a mistake. He should have had an evidentiary hearing. Did you ask for an evidentiary hearing? I'm sorry, Your Honor. I don't, I wasn't, I don't mean to make an excuse to you at all, but I don't recall. I don't see anything in the record that I read that showed that you asked for an evidentiary hearing and the judge refused you. I don't see what the point is that we have before us. I thought the point was that somehow these people were tainted, but I thought what the judge did was sufficient to take away any possible taint. I think if you go into the extrinsic evidence, if we go into that world, then it's a much, the burdens on the government to show it didn't affect these people. So that's why it's an important distinction between ex parte communication and extrinsic evidence. Ex parte communications are things like, this has nothing to do with the case. When somebody gets a phone call, it has nothing to do with guilt or innocence. This has direct, this says guilty on the cover of it. It couldn't be any more extrinsic evidence, as I point with the Seventh Circuit case, which held exactly the same thing. But isn't the extrinsic evidence, I thought, under our case law, forget about what the Seventh Circuit has said, I thought that under our case law the piece of evidence at issue, at least in theory, had to be something that could have been introduced to the jury, and nobody would, you disagree with that? I don't, don't mean. Yeah, no, that's what I'm asking. That's why I'm asking the question. I don't agree with that, Your Honor, with all due respect. What's your authority for disagreeing with it then? Sorry, let me. Under our case law. Flipping my back part of it. I made you switch the order. That's what happened. Under the Rosenthal case, I believe, ex parte contact means it does not pertain to any effect in controversy or any law applicable to the case. I believe that is the standard. That's what ex parte contact is. No, I asked you, I said, and you disagreed with me, that for this to be an extrinsic evidence case, the evidence at issue would have to be an item of something that, at least in theory, could have been introduced to the jury. And you said, no, that's not correct. And I asked, okay, well, what case says that? And then you gave me some ex parte contact case. So give me the extrinsic evidence case that you say refutes the statement I just made. Well, I don't know of a requirement. We have the two tests from the Dixon test and the Jeffries factors. Those are the factors that we look at. Once we get past the fact that it's not an ex parte contact, that it does pertain to effect in controversy, i.e., the guilt, then we think we go to the factors. I see. And I don't think there's any, at least I'm not aware of any, that it has to be admissible or something like that. Got it. That's one of the factors, I think, under the test, that that's part of it. Is it cumulative or not? When you go to that test, the problem is, I think that's the right test. If you go through those factors, I think there's clearly, in my client's favor, the vast majority of these factors favor that a new trial should be granted. I can go over those now if you like. No, I was just going to say you are almost out of time. Did you want to speak to the plain error issue that I steered you away from? Or do you want to? Judge, I think my argument in my brief is amazing and wonderful. Okay. You'll submit. We'll give you some time for rebuttal. All right, thank you. Let's hear from the government. May it please the Court. Your Honor, Larry Tong, appearing for the United States. I think the argument on the dual role issue is amazing in the sense that he stretches it beyond any recognition of what's required by the law. The simple answer to the argument that he makes is that Agent Carter did not give any expert testimony whatsoever. His sole role was to summarize bank records. There were 1,800 pages of bank records. He did precisely what Rule 1006 contemplates. He put it in a summary with no editorializing, basically creating a readable format by which the jury could see every deposit into the accounts in question and every credit or every expense that came out of those accounts. Even with reference to the underlying evidence by referencing the particular dates number page on which the entry appeared. Let me ask you a specific question getting back to this. I wanted to find out what was the state of the record. There was a motion that was brought that whether or not the ‑‑ I guess there was a motion brought for a mistrial. There was, Your Honor. And at that mistrial motion, the discussion was, I suppose, were there evidence, were witnesses called? There were no witnesses called. And as Your Honor pointed out, there were no witnesses to call. Nor were there affidavits. The defense did not submit anything at any point during the hearing or even after the trial. In essence, it came up in the context of the removal of two protesters from the courtroom who, upon being removed to the courthouse steps, made threatening statements and engaged in threatening conduct. The way the case was briefed. That's not before the court. Was that this person might have been influenced by guilty being written on and that was aggravated by him talking to two other people. Right. Was there any evidence at all or claim that that was due to anything other than an unfortunate episode that took place in continuing to use the same covers? That is, was there any evidence, claim, or otherwise that someone was intentionally trying to influence a juror? There was not. That was my understanding of the record. I just wanted to be sure. That was the state of the record, Your Honor. I was trial counsel. I remember it vividly. We were all surprised. In answer to Judge Wadford's question, these were little three-ring, not three-ring spiral topped notebooks, the small size, not a whole page. Knowing the government, I believe they said skill craft on the cover. We were there. As we dealt with the individualized voir dire of each juror and all the alternates on issue one, not before the court, namely the protesters, this juror comes to sidebar and says, by the way, I've got this issue. It appears that when I turn the book, I see the imprint of the word guilty on the outside cover. There is a discussion among the parties as to how that could have happened. The court points out what we do in this courthouse is we remove the pages containing the notes of the jurors at the conclusion of each trial, but then we recycle the notebooks. I'm sure this came from somebody putting a piece of paper on top of this notebook in some other case by some other juror and wrote the word guilty, and that's the imprint that you see. My recollection, although I don't believe it appears in my friend's brief, is that the cover itself was marked an exhibit. It was ripped off of the notebook, and it was put in the court record for later review. There was no suggestion whatsoever that this was an external influence specific to this case. It is surely not like the Vasquez case that my colleague quotes, because there the word guilty appeared right in the pages of the notes of the juror, leading the district judge to come to the conclusion that the logical person who wrote it was another juror because no one else except for the courthouse staff would have access to the notebook. This was, as the court put it, some other trial, some other juror unrelated to this case. There was no discussion or any information from the defense to contravene that assumption. Can I ask you, though, about the statement? Tell me if I'm wrong on the statement, but I mentioned to your opponent that I thought the juror had said or, I'm sorry, that the juror basically had brought this up for the first time four days in, which I would have expected the juror to have seen that right away. Well, is it the case that the jurors got the same notebook each day, I assume? Yes, Your Honor. When the trial starts after the opening statement is concluded, the notebooks are passed out, and then each one has a notebook that they keep for the duration, in this case for three weeks. Okay. It was four days in, and I'm stepping slightly out of the record here if I have the court's permission, but the word was not readily discernible. It wasn't like in black ink. You sort of had to turn it at an angle to catch the reflection in the light. There is nothing in the record as to when the juror first noticed it. The juror first brought it up on day four, which was after a three-day weekend after the first week of the trial, and it was in the context of the individualized voir dire on the impact, if any, on the protesters. So there is that gap, but I would submit that what we're dealing with, as the court has pointed out and as a fellow panel of this court has already found, is we're dealing with the normal abuse of discretion dealing with a motion for mistrial because this is an ex parte contact with the jury. It is not extrinsic evidence. The guilty was completely free-floating from any of the evidence in the case. It wasn't in the notes. It wasn't a comment on the meaning of particular evidence. It didn't even come in the context of this case. So under those circumstances. And it wasn't written by a juror on this particular trial because the juror who brought it to the attention of the court had had that notebook for the full time. Indeed, and, Your Honor, he said I didn't write it, which is why he raised the whole issue. I want to re-ask you the question my colleague asked your adversary. It's rather strange. His first comment was someone's trying to set me up. Was there anything in the discussions in the record? I didn't find any reading the record, but were there any discussions in the record to show us why he made that comment or why he made that statement? There is nothing in the record among counsel or the court other than the court's unrebutted statement that no one set you up, and here's how it must have happened. It came from a different trial. I can say, Your Honor, my interpretation in retrospect is that this was a highly emotional, politically charged trial, as my colleague has already pointed out. It came on the heels of a protest that was fairly disturbing, but, again, not raised as an issue on this appeal. It was in the first panel case. There was a lot of screaming and yelling and obscenities and people making threats outside the courtroom, putting things on YouTube, basically questioning the authority of the court as well as the United States government. This was the context of the trial. Perhaps that flavored the juror's comment that somehow someone is setting me up because they had already been individually questioned by these two protesters about their ethnicity, their willingness to convict people of crimes when these people were Hawaiian sovereigns. It was an unusual environment. It may have been a fraud trial, but I would say it was more of a political protest overlay that gave context to the trial. Helpful. Thank you. But you, I guess, what would have been nice, I'm not saying it was required here on the district judge's part, but it would have been nice if we had known when the juror first noticed that because the judge is assuming that that imprint had been there all along from day one. And if the juror had said, no, your honor, I specifically remember looking at this thing and it wasn't there, it just appeared yesterday or it appeared, then, of course, it's a whole different case. And so what we have is the judge's assumption that, well, no, that must have come from a different case, but we don't have the follow-up question to the juror that I think would have, you know, eliminated any doubt on that. Now, I agree with my colleague that there's nothing in the record that contradicts the judge's assumption, but we don't really know for sure. I couldn't agree with you more, your honor. I listened to the earlier argument where you were talking to one of my colleagues in AUSA from a different district. I agree. I mean, that's on me. I should have somehow thought to bring it out. But ultimately, I think that's not the standard of review here. The issue really is whether the court abused its discretion in handling the matter. Judge Seabright conducted a very, very searching, careful, and thorough inquiry of all of the jurors, it appears in our supplemental excerpts of record. He called every one of them in to talk about external influences and not allowing them to come to bear on the verdict. As to the three who saw this, he made it clear that they understood that his assumption was the gospel, that this was just a word that just came from a different trial. It had nothing to do with the evidence of this case. It could not enter their deliberations. It could not influence them. And I believe during that inquiry, each one of them stated unequivocally, I will not let it influence me. Your honors are entitled, and I believe even required, to give deference to that on appeal, to assume that his instruction was followed. And the proof is in the pudding. As I pointed out in our brief, we had two defendants, and the jury was instructed to consider the evidence as to each defendant and each count separately, and they acquitted on three counts. Hardly the result of a jury that would have been unduly influenced by some external influence saying, hey, this person's guilty. The guilty was unspecific to any defendant. It's just the word guilty. It wasn't guilty as to defendant Mahealani Ventura Oliver, but not as to Tevis, who was acquitted. It shows that the jury did its job, and it kept its word, and it gave careful consideration to the evidence. And I simply don't see anything in the record suggesting there was an abuse of discretion. Could it have been more perfect? Yes, on hindsight it could have been. It always could be. Okay, thanks very much for your argument. We'll give defense counsel a minute for rebuttal. If you need it, up to you. Just briefly, Your Honor, may it please the court. One of the things under the SIA case, I think cited by my opponent, there is no need for an evidentiary hearing on extrinsic evidence cases if the court knows the exact scope and nature of the stuff that came in. And we don't know. We're just going to complete assumption that it came from a juror in a previous case. Did you ask for an evidentiary hearing? No. I do not believe that the trial counsel did. Well, did trial counsel ask for an evidentiary hearing at that point? No, Your Honor. Why isn't that issue waived? The other thing is on this record, who would you have called if you had had a hearing? As I understand it from this record, these things are reusable. And they're given to a juror, and each one has one. And there's nothing in this record that says that the one that had the imprint of guilty ever passed from somebody to somebody else. It was always with the juror who had it. So who would you call as a witness? With all due respect, everything you're saying is an assumption based on what you think. Based on this record. But it's not. There's no testimony as to what occurred. That's what we should have had. We should have had some type of hearing where a witness is called. Mr. Bailiff. Who would be the witness? The bailiff. The jurors? Possibly. The bailiff for sure. The people in charge of security for the court. And as we just talked about, there was a big ruckus in the court. There was a political thing going on. It was very hot. It was in the media. And so the idea that we can just, oh, it must have been a previous person, there's just no evidence for that at all. That's why there should have been a hearing. Okay. Thank you, counsel. Thank you. Appreciate your argument. The case just argued and will stand submitted.
judges: Wallace, Farris, Watford